IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02943-MEH

JEAN MARY MARON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

---

# ORDER
---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff, Jean Mary Maron, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist in its determination of this appeal. Because the ALJ failed to properly analyze the evidence in the medical record at step three, the Court reverses the Administrative Law Judge's ("ALJ") decision and remands this case to the Commissioner for further proceedings.[1]

## BACKGROUND

### I. Procedural History

Plaintiff alleges she first became disabled on November 1, 2012, after which she has not engaged in any substantial gainful employment. [AR 120]. The SSA initially denied Plaintiff's

---

[1] The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and D.C. Colo. LCivR 72.2. ECF No. 12.

application for disability benefits on June 16, 2014. [AR 70–77]. At Plaintiff's request, an ALJ scheduled a hearing for August 17, 2015. [AR 93]. Plaintiff and a vocational expert testified at the hearing. [AR 27–48]. On August 28, 2015, the ALJ issued a written ruling, which found Plaintiff was not disabled since November 1, 2012. [AR 11–18]. According to the ALJ, although Plaintiff has severe impairments, they do not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 13–17]. Furthermore, the ALJ found that, despite Plaintiff's limitations, she is capable of performing her past work as a receptionist. [AR 17–18]. The SSA Appeals Council subsequently denied Plaintiff's request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1–6]; *see* 20 C.F.R. § 416.1481. Plaintiff timely filed her Complaint with this Court seeking review of the ALJ/Commissioner's final decision. ECF No. 1.

## II.     Plaintiff's Conditions

Plaintiff was born on August 25, 1955; she was fifty-eight years old when she filed her application for disability benefits. [AR 120]. Plaintiff claims she became disabled on November 1, 2012 due to constant pain in her legs, knees, neck, and lower back. [AR 170]. The relevant portion of Plaintiff's medical history begins in November 2011, when a doctor at Littleton Adventist Hospital performed a bone density exam and diagnosed Plaintiff with osteoporosis. [AR 249].[2] Then, on December 8, 2011, Plaintiff reported to the same hospital with complaints of "leg pain, flank pain, and dysuria." [AR 251]. The doctor concluded that Plaintiff's pain was associated with the fact that she was "relatively immunosuppresed by being on prednisone chronically for Cushing

---

[2] A subsequent bone density exam on November 1, 2013 confirmed Plaintiff's osteoporosis. [AR 326].

2

syndrome." [AR 254]. Because Plaintiff continued to report pain, she underwent an X-ray of her hips on September 21, 2012. [AR 284]. The X-ray revealed "no acute fracture" and "no acute osseous abnormality." [*Id.*] Plaintiff also received an X-ray of her lumbar spine on October 16, 2012, which showed normal results other than mild arthritic changes. [AR 283].

Also in October 2012, Plaintiff began seeing a rheumatologist, Dr. Anita Zachariah, for muscle pains, fatigue, weakness, and tingling or numbness. [AR 635–71]. Because Dr. Zachariah believed that Plaintiff's pain may have been due to lumbar radiculopathy, she ordered Plaintiff to undergo an MRI. [AR 638]. The MRI revealed, *inter alia*, that Plaintiff had mild degenerative desiccation in the C5–6 and C6–7 discs, broad annular bulge and or disc protrusion at C5–6, and "small left paracentral and lateral focal disc protrusion at C6–7, which distorts the left anterolateral thecal sac." [AR 631]. After reviewing the results of the MRI on November 9, 2012, Dr. Zachariah stated that the MRI "showed mild disc herniation." [AR 635]. Although Plaintiff continued to complain of muscle weakness and fatigue, Dr. Zachariah's November 9, 2012 physical examination noted no abnormalities other than a positive straight leg raise test and a positive Tinel's sign for carpel tunnel syndrome. [AR 637]. Neither Plaintiff nor Dr. Zachariah noted any changes to Plaintiff's conditions during a December 14, 2012 visit.[3] [AR 639–43].

On February 22, 2013, Dr. Amelia Scott Barrett examined Plaintiff for bulging discs and leg pain. [AR 335]. Dr. Barrett concluded that Plaintiff "presents with right leg weakness and pain that may be due to a lumbar radiculopathy." [AR 337]. Accordingly, Dr. Barrett ordered an MRI and physical therapy to treat cervical disc herniation. [*Id.*] After reviewing the results, Dr. Barrett

---

[3] Plaintiff's condition also remained the same during her March and May 2013 visits with Dr. Zachariah. [AR 644–51].

concluded the MRI showed no abnormalities. [AR 339].

Because Plaintiff also complained of hip pain, Dr. Barrett refereed Plaintiff to Dr. Craig Loucks, an orthopedic surgeon, who ordered an MRI of Plaintiff's hip. [AR 339, 362–64]. The MRI revealed osteoarthritic changes of the right hip and tearing of the labrum. [AR 376]. Dr. Loucks concluded that the images of Plaintiff's hip were "fairly impressive," and "certainly account for her ongoing pain that is affecting her quality of life as well as her activities of daily living." [AR 361]. Accordingly, Dr. Loucks performed a right total hip arthroplasty on July 30, 2013. [AR 361, 369–71]. Thirteen days after the surgery, a physician's assistant noted that, although Plaintiff is still walking with a cane, she is "doing very well" overall [AR 360]. During a subsequent follow-up appointment on September 13, 2013, Plaintiff stated that "her hip is feeling reasonably well." [AR 358]. By her October 2013 follow-up, Plaintiff had no pain in the hip joint and was "thrilled with the results of the hip replacement." [AR 357].

However, also in the fall of 2013, Plaintiff began reporting severe knee pain, and that "her fibromyalgia is flaring all over now . . . ."[4] [AR 652, 659]. Accordingly, Dr. Loucks ordered an MRI of Plaintiff's knee on October 14, 2013. [AR 365]. The imaging revealed no internal derangement other than mild cartilage degeneration and probable denervation at the lateral head of her gastroc, soleus, and anterolateral musculature. [AR 357]. Dr. Loucks noted that some of Plaintiff's neurological symptoms seemed "bizarre," but stated that this was better left to her neurologist and rheumatologist. [*Id.*]

When Plaintiff returned to Dr. Zachariah on December 20, 2013, Dr. Zachariah stated that

---

[4] Although Plaintiff's self-reported pain had changed slightly, Dr. Zachariah's physician examination of Plaintiff remained the same as it was during the May 2013 visit. [AR 654].

4

Plaintiff was "doing well on her regimen now." [AR 662–66]. On February 24, 2014—Plaintiff's last recorded visit with Dr. Zachariah—Plaintiff noted that her pain is intermittent, depending on her activity. [AR 667].

Plaintiff visited Dr. Laura Moran for a consultative evaluation on June 5, 2014. [AR 682–85]. After examining Plaintiff and reviewing her records, Dr. Moran concluded that Plaintiff "can alternate activities of sitting, standing, and walking as needed for her comfort for a total of 8 hours per day. She can lift and carry about 20 pounds. She is able to bend. She is unable to squat. She is able to . . . do all daily self-care activities." [AR 652].

Dr. Zachariah completed medical source questionnaires in July 2014 and June 2015.[5] [AR 688–702]. In the first statement, Dr. Zachariah noted that Plaintiff had chronic moderate to severe fibromyalgia, neuropathy, and back pain. [AR 668]. She also stated that Plaintiff could not sit or stand for longer than thirty minutes at one time, and Plaintiff would have to take five minute breaks every thirty minutes. [AR 689–90]. Accordingly, Plaintiff would be off task approximately 15% of the work day, and she would be absent from work about three days per month. [AR 691]. In the June 2015 statement, Dr. Zachariah increased the time of Plaintiff's required breaks from five minutes to twenty minutes each, and noted that Plaintiff could not sit for more than one hour total in any given workday. [AR 700]. Finally, Dr. Zachariah believed Plaintiff would have to miss up to four days of work per month. [AR 702].

### III. Hearing Testimony

A hearing was held before an ALJ on August 17, 2015. [AR 25–49]. Plaintiff and a vocational expert testified at the hearing. [*Id.*] Plaintiff first stated that her osteoarthritis,

---

[5] Dr. Zachariah amended her June statement in July 2015. [AR 699–702].

osteoporosis, muscle atrophy, degenerative disc disease, and fibromyalgia are causing her significant pain and fatigue, which keep her from working. [AR 29–30]. Regarding the fatigue, Plaintiff testified that, "[s]ome days I don't shower. I don't dress. It's hard to do even a few chores around the house. I get worn down, and there are days I can't even get across the street to say hi to a neighbor." [AR 30].

Plaintiff also testified about her work history as a receptionist for an optometrist. [AR 33]. Plaintiff stated that she worked for ten years "checking patients in and out, taking copays and money, charting, scheduling, pulling files, scanning, [and] phones." [*Id.*] Although she stopped working regularly in November 2012, Plaintiff testified that her employer held the job open for her until January 2013. [AR 34]. Because Plaintiff was in so much pain that she could not leave the house, her employer eventually asked her to resign. [*Id.*]

Plaintiff then discussed her ability to conduct activities of daily living. [AR 36–38]. According to Plaintiff, she wakes up between 6:30 a.m. and 9:00 a.m. and makes breakfast if "there's something easy to fix." [AR 36]. Then, Plaintiff does dishes, but usually is in too much pain to do all of them. [*Id.*] She generally tries to do laundry and pay bills, but often feels as though she cannot be active for more than three or four hours of the day. [*Id.*] Plaintiff stated that she "very rarely drive[s] [herself] anywhere" because of her blurred visions and the pain she experiences when getting in and out of the car. [AR 36–37].

The ALJ then posed a series of hypotheticals to the vocational expert. [AR 41]. First, the ALJ asked the expert to consider whether an individual who is limited to light exertional work with occasional posturals could maintain employment as a receptionist. [*Id.*] The vocational expert responded that the hypothetical individual could perform that job. [*Id.*] The ALJ then asked the

expert whether an individual who is limited to light work and frequent handling, fingering, and feeling with both upper extremities could work as a receptionist. [*Id.*] The vocational expert again responded in the affirmative. [*Id.*] For the third and fourth hypotheticals, the ALJ posed the same limitations as hypotheticals one and two, except he changed the exertional level to sedentary. [AR 41–42]. The expert testified that both individuals could maintain employment as a receptionist. [AR 42].

Counsel for Plaintiff then examined the vocational expert. [AR 42–46]. First, counsel asked the expert whether an individual who is required to take three to four twenty minute breaks per day could perform work as a receptionist. [AR 44]. According to the expert, this person could not maintain employment. [*Id.*] Additionally, the expert testified that an individual who would be off task more than 25% of the day and absent approximately four days per month would not sustain employment as a receptionist. [AR 45].

The ALJ issued an unfavorable decision on August 28, 2015. [AR 11–18].

## LEGAL STANDARDS

**I.      SSA's Five-Step Process for Determining Disability**

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful

activity. If he is, disability benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two analyzes whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. *See id.* Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, he is presumed to be disabled. If the impairment does not satisfy Step Three, the ALJ must proceed to Step Four, which requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. *See* 20 C.F.R. § 404.1520(e), (f). However, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five, where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## II.     Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed."

*Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## ALJ's RULING

The ALJ first ruled that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. [AR 13]. The ALJ then found at step one that Plaintiff has not engaged in substantial gainful activity since November 1, 2012. [*Id.*] Proceeding to step two, the ALJ determined that Plaintiff's "degenerative disc disease and osteoarthritis" are severe impairments. [*Id.*] Although Plaintiff's record also showed bladder cancer in remission, osteoporosis, fibromyalgia, inguinal hernia, adrenal insufficiency, muscle atrophy, and carpel tunnel syndrome, these conditions are not severe, because they "have either been successfully treated, controlled, stabilized, or otherwise do not more than minimally affect the claimant's ability to perform basic work activities." [*Id.*]

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met the severity of one of those listed in 20 C.F.R. § 404.1520(d). [AR 14]. The ALJ first held that Plaintiff's osteoarthritis failed to meet the Listing 1.02 for major dysfunction of

9

a joint. [*Id.*] According to the ALJ, the record "does not demonstrate gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints . . . ." [*Id.*] Next, the ALJ analyzed whether Plaintiff's degenerative disc disease meets Listing 1.04 for disorders of the spine. [*Id.*] The ALJ concluded that the record did not demonstrate "a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising." [*Id.*]

The ALJ then found Plaintiff has the RFC to perform light work with an additional limitation that Plaintiff must have the occasional freedom to move from sitting to standing. [*Id.*] In making his RFC determination, the ALJ considered the evidence in the medical record, Plaintiff's own statements, and the opinion evidence of examining physicians. [AR 14–17].

Regarding Plaintiff's personal statements, the ALJ found the impairments could reasonably be expected to cause the alleged symptoms. [AR 16]. However, he found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible. [*Id.*] First, according to the ALJ, Plaintiff acknowledged that she could do light cleaning, laundry, dishes, and shopping. [AR 15–16]. Additionally, although Plaintiff asserted she has extremely limited mobility, "she continues to drive and admitted to cooking dinner for her family up to two times per week." [AR 16].

As for the medical opinion evidence, the ALJ gave great weight to the statement of Dr. Moran, who examined Plaintiff in June 2014. [*Id.*] The ALJ found that the medical evidence supported Dr. Moran's conclusion that Plaintiff could work for an eight hour day with only some limitations on her ability to lift and carry heavy objects. [*Id.*] Next, the ALJ gave little weight to

Dr. Zachariah's opinion statement. [AR 17]. According to the ALJ, Dr. Zachariah's opinion that Plaintiff would need to alternate between sitting and standing every thirty minutes and would be absent from work three times per month was directly contrary to Dr. Zachariah's own treatment notes, which showed no restrictions on Plaintiff's range of motion or ability to walk. [*Id.*] The ALJ then assigned great weight to the state agency consultant's opinion, because it was consistent with the medical record. [*Id.*] The consultant reviewed Plaintiff's medical file and concluded that Plaintiff could lift and carry up to twenty pounds and would have only some difficulties with postural activities. [*Id.*]

As for the non-medical statements, the ALJ gave little weight to the work activity questionnaire filled out by an employee at Plaintiff's place of prior employment. [*Id.*] The ALJ found that the questionnaire lacked credibility, because the author did not identify her position and her report was not consistent with the medical record. [*Id.*] Based on the medical record and opinion evidence, the ALJ concluded Plaintiff "can work at a light exertional level except that she can only occasionally balance, bend, crawl, crouch, kneel, stoop, or climb ramps or stairs, and can never climb ladders, ropes or scaffolds." [*Id.*]

Moving to step four, the ALJ held that Plaintiff is capable of performing her past relevant work. [*Id.*] Relying on the testimony of the vocational expert, the ALJ found that the receptionist position does not require more than light physical effort. [*Id.*] Therefore, the ALJ held that Plaintiff was not disabled from November 1, 2012 through the date of his opinion. [AR 18].

## ISSUES ON APPEAL

On appeal, Plaintiff alleges the following errors by the Commissioner: (1) determining that Plaintiff did not meet the listed condition for disorders of the spine, (2) giving little weight to the

opinion of Dr. Zachariah, and (3) discounting Plaintiff's complaints of pain and impairment. Pl.'s Opening Br. 5–13, ECF No. 17.

**ANALYSIS**

The Court first holds the ALJ did not sufficiently analyze the medical evidence when determining that Plaintiff did not satisfy a listed condition. In discussing whether this error was harmless, the Court will address Plaintiff's argument regarding the treating physician rule. Because the Court will address only so much of Plaintiff's arguments as is necessary to remand, the Court does not reach Plaintiff's final contention of error.

**I. Whether the ALJ Erred in Determining that Plaintiff did not Meet the Listed Condition for Disorders of the Spine.**

Plaintiff first argues the ALJ improperly found that she did not meet Listing 1.04A. Pl.'s Opening Br. 5–6. That listing establishes that a claimant is conclusively disabled if she has a disorder of the spine, such as osteoarthritis or degenerative disc disease, and there is:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, App. 1, § 1.04A (2017).

The following is the entirety of the ALJ's discussion on this issue:

> The claimant's degenerative disk disease also fails to meet or medically equal Listing 1.04 (Disorders of the spine) of the Appendix 1 impairments. The record fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (1.04A). Furthermore, the record evidence fails to establish spinal arachnoiditis (1.04B) or lumbar spinal stenosis with pseudoclaudication (1.04C). Accordingly, the undersigned finds that the claimant's degenerative disk disease fails to meet or medically equal listing level severity.

[AR 14].

The Court must determine whether this finding is supported by substantial evidence. *Williamson*, 350 F.3d at 1098. However, when an ALJ does not discuss the evidence he relied on in reaching his finding, "it is impossible to know how the ALJ weighed the evidence," and remand is appropriate. *Groberg v. Astrue*, 415 F. App'x 65, 72 (10th Cir. 2011) (reversing the ALJ's step three determination, because, "given the quantity of proof [the plaintiff] had adduced in this case, naked reliance on the regulation does not satisfy the ALJ's duty to properly analyze the evidence"); *Clifton v. Charter*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment.").

Here, because Plaintiff's medical record contains some evidence of the listing requirements, the ALJ was required to provide a proper evidentiary analysis. *Clifton*, 79 F.3d at 1009–10. Two of Plaintiff's doctors noted that Plaintiff's pain could be caused by lumbar radiculopathy, which is a condition "caused by compression or irritation of a nerve as it exits the spinal column." *Definition of Radiculopathy*, MEDICINENET, http://www.medicinenet.com/radiculopathy/article.htm (last visited May 26, 2017). [AR 337, 637]. Furthermore, in a separate section of his opinion, the ALJ himself recognized that Dr. Barrett diagnosed Plaintiff with lumbar radiculopathy. [AR 15]. Therefore, the record contains some evidence of nerve root compression. Moreover, Dr. Zachariah consistently noted that Plaintiff experienced pain in her spine. [AR 641, 646, 650]. Regarding range of motion, Dr. Moran, on whose opinion the ALJ placed great weight, stated that Plaintiff had decreased rotation of her cervical spine. [AR 683]. Finally, the medical record contains references

to Plaintiff's muscle weakness and pains, [AR 640, 645], and Plaintiff consistently had positive straight-leg raising tests. [AR 637, 641, 646]. Although it may be true that the record fails to establish Listing 1.04, "naked reliance on the regulation does not satisfy the ALJ's duty to properly analyze the evidence." *Groberg*, 415 F. App'x at 73 (remanding to the ALJ, because "the ALJ did not discuss the specific medical evidence that caused him to reach the conclusion that Listing 1.04A was not satisfied.").

The Court must next consider whether the ALJ's failure to analyze the evidence was harmless error. In *Fischer-Ross v. Barnhart*, the Tenth Circuit held that "where an ALJ provides detailed findings" in a separate part of his opinion "that confirm rejection of the listings in a manner readily reviewable," remand is inappropriate. 431 F.3d 729, 733–34 (10th Cir. 2005) ("Neither *Clifton's* letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."). Applying this rule, in *Duncan v. Colvin* the Tenth Circuit held that the ALJ's failure to discuss whether Plaintiff met Listing 1.04A as part of the step three analysis was harmless error. 608 F. App'x 566, 574–76 (10th Cir. 2015). According to the Court, the ALJ's uncontroverted finding that the plaintiff had the RFC to occasionally lift or carry ten pounds, "negat[ed] the possibility of any finding that [the plaintiff] is conclusively disabled at step three . . . ." *Id.* at 576.

Here, in the ALJ's determination of Plaintiff's RFC, he discusses much of the medical evidence in the record. [AR 15–16]. However, Plaintiff argues, and the Court agrees, that the ALJ incorrectly formulated her RFC by improperly applying the treating physician rule. Pl.'s Opening Br. 6–10. Because the ALJ's RFC finding is neither confirmed nor unchallenged, the determination

does not "conclusively preclude [Plaintiff's] qualification under the listings at step three." *Id.* at 735.

The treating physician rule generally requires the Commissioner to "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ must first determine whether the opinion is conclusive—that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. To do so, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. . . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (applying Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); *accord Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(d)(2).

If a treating physician's opinion is not entitled to controlling weight, the ALJ must proceed to the next step, because "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300; *see also Mays*, 739 F.3d at 574. At the second step, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight

15

assigned." *Krauser*, 638 F.3d at 1330. If this is not done, remand is mandatory. *Id.*

In weighing the opinion, the ALJ must consider the following factors:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331. Without a discussion of these factors, remand is required. *Watkins*, 350 F.3d at 1300–01; *accord Krauser*, 638 F.3d at 1330.

In the present case, the ALJ assigned "little weight" to the opinion of Dr. Zachariah—Plaintiff's treating physician. [AR 17]. The ALJ's discussion of the weight he assigned Dr. Zachariah's opinion is only five sentences long and does not properly perform either step of the treating physician analysis. First, the ALJ does not recognize that Dr. Zachariah was Plaintiff's treating physician, and thus, does not treat her opinion differently from that of any other medical provider. Critically, the ALJ does not separate his analysis into the required two steps. *See Krauser*, 638 F.3d at 1330 ("[T]he ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."). Although the ALJ states that Dr. Zachariah's opinion is entitled to "little weight," he does not first discuss why the opinion is not entitled to controlling weight. *See Brewer v. Colvin*, No. CIV-14-375-KEW, 2016 WL 1183119, at *4 (E.D. Okla. Mar. 28, 2016) (remanding the case to the Commissioner, because "[t]he ALJ's analysis of this treating physician's opinion skips the first required analysis as to whether the opinion is entitled to controlling weight and immediately assesses a reduced weight to the opinion."). Because the ALJ's opinion does not perform the complete analysis required by *Watkins*, the ALJ's application of the treating physician

16

rule, and his corresponding RFC determination, is incomplete.

Second, even if the ALJ had discussed the first step of the treating physician rule, the ALJ's determination would still be inadequate, because the ALJ did not sufficiently discuss the step-two factors. *See Watkins*, 350 F.3d at 1300–01 (stating that remand is required if the ALJ does not give good reasons for the weight he assigns the treating physician's opinion). The ALJ completely fails to discuss the first, second, fifth, and sixth factors. Although ALJs are not required to specifically analyze all six factors, *Griner v. Astrue*, 281 F. App'x 797, 800 (10th Cir. 2008), the Court finds that the ALJ's analysis of only two of the factors is insufficient, especially where, as here, the ALJ's discussion of those factors is incomplete. The ALJ stated that Dr. Zachariah's opinion is contrary to her own treatment notes, which show "no restrictions on [Plaintiff's] range of motion or gait and station." [AR 17]. However, the fact that Plaintiff has no restrictions on her range of motion or gait does not establish that she could sit for an entire eight hour day and would not need to be absent three to four days per month. Therefore, the ALJ does not demonstrate that Dr. Zachariah's opinion is, in fact, contrary to the medical record. Although it may be true that Dr. Zachariah's opinion should be entitled to little weight, the ALJ does not provide sufficient analysis for the Court to review that determination.

In sum, unlike *Duncan*, where the court found that the ALJ's uncontroverted RFC finding made the error at step three harmless, the ALJ here did not properly analyze Plaintiff's RFC. Therefore, the Court cannot rely on the RFC determination to hold that the step three determination was harmless. The Court remands to the ALJ for an appropriate analysis at step three.

## II. Remaining Issue

Plaintiff also contends that the ALJ improperly discounted her testimony. Pl's Opening Br.

17

11–13. However, the Court "address[es] only so much of Plaintiff's arguments as are sufficient to require reversal." *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014). The Court expresses no opinion as to the Plaintiff's remaining argument, and neither party should take the Court's silence as implied approval or disapproval of the arguments. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand."). The Court also does not suggest a result that should be reached on remand; rather, the Court encourages the parties, the ALJ, and the Commissioner on remand to consider fully and anew the evidence and all issues raised. *See Kepler*, 68 F.3d at 391–92 ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## **CONCLUSION**

In sum, the ALJ erred by not discussing the medical evidence when making his step three finding. The ALJ's discussion of the medical record at step four does not render the error harmless, because the ALJ's RFC determination is neither confirmed nor unchallenged. To the contrary, by improperly applying the treating physician rule, the ALJ erred in making his RFC determination. Accordingly, the decision of the ALJ that Plaintiff Jean M. Maron was not disabled is **reversed and remanded** to the Commissioner for further consideration and/or clarification in accordance with this order.

Dated at Denver, Colorado this 30th day of May, 2017.

        BY THE COURT:

        *Michael E. Hegarty*

        Michael E. Hegarty
        United States Magistrate Judge